IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ERIC MAYERS, | ) | |
| | ) | |
|     Plaintiff | ) | |
| | ) | |
|     vs. | ) | Civil Action No. 05-1393 |
| | ) | |
| IRAJ SHARIAT, | ) | Judge Nora Barry Fischer/ |
| | ) | Magistrate Judge Amy Reynolds Hay |
|     Defendant | ) | |

REPORT AND RECOMMENDATION

RECOMMENDATION

It is respectfully recommended that Defendant's Motion for Summary Judgment [Dkt. 50] be granted.

REPORT

Eric Mayers ("Plaintiff"), a state prisoner, has filed a civil rights action against Iraj Shariat, an ophthalmologist who treated Plaintiff for glaucoma. In his civil rights complaint, filed pursuant to 42 U.S.C. § 1983, Plaintiff alleges that Dr. Shariat violated Plaintiff's Eighth Amendment rights when during the laser surgery to treat his glaucoma, something allegedly went wrong. Plaintiff seeks compensatory and punitive damages. He also attempts to bring a state law claim of negligence against Dr. Shariat.

Presently before the Court is a Motion for Summary Judgment brought by Dr. Shariat. For the reasons that follow, the motion should be granted.

*Standard of Review*

Summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a *genuine issue for trial* ... or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Electric Industrial Corp. v. Zenith Radio Corp., 475 U.S. 574 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). Thus, it must be determined "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Brown v. Grabowski, 922 F.2d 1097, 1111 (3d Cir. 1990), cert. denied, 501 U.S. 1218 (1991), quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 251-52.

**Discussion**

In the Complaint, Plaintiff claims that on November 4, 2003, he was taken out of SCI-Somerset to go to Somerset Hospital for "cataract surgery." Dkt. 4 at p. 7, ¶ 5. When Plaintiff was asked to sign a consent to surgery for both the left eye and the right eye, he explained that "the cataract" was only in his left eye. Id. at p. 8, ¶ 11. In the surgical room, Dr. Shariat explained that he was not removing a cataract but that he would be performing surgery to relieve pressure from the eye. In the words of the complaint, Dr. Shariat explained that he would "cut a hole in the back of my eyeball using a laser so that the fluids in my eye will drain and that will

make the pressure go down and then later on I'll bring you back to remove the cataract." Id. at p. 8, ¶15 (case corrected, bolding and underlining deleted).  Plaintiff complains that at some point during the laser surgery he experienced pain in his left eye and advised Dr. Shariat of this effect. Id. at p. 8, ¶ 18.  Dr. Shariat stopped for a minute, made an adjustment to the laser and then started again on the left eye.  Id. at p. 9, ¶ 20.  Plaintiff then told Dr. Shariat that he could still feel the laser, but it just was not as sharp as before.  Id.  Dr. Shariat told Plaintiff it would be only 30 seconds more and then Dr. Shariat finished with the left eye.  Id.

When Dr. Shariat indicated he was going to start on the right eye Plaintiff protested that there was nothing wrong with the right eye.  Id. at 9, ¶ 22.  Dr. Shariat explained why surgery on the right eye was necessary and advised Plaintiff that absent the right eye surgery, he could eventually suffer blindness in the left eye.  Id. at 9, ¶ 23.  Plaintiff reluctantly agreed to undergo surgery on the right eye.  Id. at pp. 9 - 10, ¶¶ 25 - 26.  Plaintiff claims that when Dr. Shariat began the surgery on the right eye, the laser beam was so powerful it knocked Plaintiff to the floor, after which point Plaintiff refused to allow Dr. Shariat to continue with the procedure.  Id. at p. 10, ¶¶ 28-37.

Plaintiff claims he experienced twitching in his left eye on November 5, 2007 and on November 7, 2003, went to the medical department where his eye was flushed, apparently with fluids.  Id. at p. 11, ¶¶ 58-64. During this visit, the eye doctor reportedly told Plaintiff that he observed "a burn or something" in the back of his eye, which "fell on the floor" after the flushing procedure.  Id. at p. 12, ¶¶ 62 & 64.

Roughly one week later, Plaintiff was called to medical to be examined.  When he learned that the examining physician would be Dr. Shariat, Plaintiff refused to be seen.  Id. at p. 12, ¶ 67. Plaintiff complains that he is blind in his left eye.  Id. at p. 13, ¶ 77.

Plaintiff alleges that Dr. Shariat violated his Eighth Amendment right against cruel and unusual punishment.  The Supreme Court has explained that analysis of a violation of the Eighth Amendment involves a two pronged inquiry: (1) an objective inquiry into the qualitative nature of the harm suffered by the victim of the alleged punishment and (2) a "subjective inquiry" into the mind of the person inflicting the harm.  See Wilson v. Seiter, 501 U.S. 294 (1991).  Accord Sims v. Artuz, 230 F.3d 14, 21 (2d Cir. 2000)("A claim of cruel and unusual punishment in violation of the Eighth Amendment has two components–one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect.").  The Court of Appeals for the Third Circuit has explained the objective element as requiring proof that "the deprivation was sufficiently serious to fall within the Eighth Amendment's zone of protections. . . .  If not our inquiry is at an end."  Fuentes v. Wagner, 206 F.3d 335, 344 (3d Cir. 2000).  Only if the harm suffered is sufficiently serious does the court then turn to analyze the subjective element, which the Third Circuit has described as determining whether the prison "officials acted with a sufficiently culpable state of mind.  In other words, we must determine if they were motivated by a desire to inflict unnecessary and wanton pain."  Id. (citations omitted).

As to the subjective component, in cases such as this one involving medical care, the Supreme Court has held that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain ... proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 104 (1976) (internal quotations omitted).  The Court has held that "deliberate indifference" occurs when a prison "official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).  The plaintiff bears

4

the burden of proof as to both the subjective and objective prongs.  See Pasha v. Barry, No. CIV.A. 96-466, 1996 WL 365408, at *1 (D.D.C.  June 21, 1996)("With respect to prevailing on an Eighth Amendment claim against ... the warden ... the plaintiff bears the burden of demonstrating that his claims satisfy both the objective and subjective requirements..").

As a corollary of the deliberate indifference standard, mere negligence by staff at the prison, medical personnel and/or physicians in treating prisoners is not sufficient to state an Eighth Amendment violation.  Estelle, 429 U.S. at 105-06.  The Supreme Court has held that

> in the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind."  Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.  In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.  It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

Id.

In the instant case, even taking as true all the allegations of the complaint, it fails to state a claim of deliberate indifference.  At most, the complaint alleges that Plaintiff felt the laser in his left eye, and in response, Dr. Shariat adjusted the laser.  Although Plaintiff could still feel the laser after Dr. Shariat turned it down, he did not feel it as much and Dr. Shariat stated the procedure would conclude in only 30 seconds more.  Up to this point, there is no infliction of serious enough harm such that the objective prong could be satisfied.  Even if, however, we assumed the objective prong were met, clearly the subjective prong was not.  In response to Plaintiff's initial complaints of his being able to feel the laser, Dr. Shariat stopped the procedure, turned down the laser and only then continued with the procedure.  Although Plaintiff claimed that he could still feel the laser after the adjustment, Dr. Shariat informed him that the discomfort

would only be 30 seconds more. These allegations simply are insufficient to show Dr. Shariat possessed the necessary mindset so as to make out an Eighth Amendment claim.

As to the right eye, Plaintiff simply complained that upon turning the laser on, a wide beam hit his eye and knocked him off the chair. Thereafter, Plaintiff refused to permit Dr. Shariat to continue with the procedure. Even if we were to assume this allegation satisfied the objective prong, it certainly does not satisfy the subjective prong. The allegation reveals nothing more that perhaps a laser malfunction or a negligent adjustment of the laser, but does not indicate Dr. Shariat's knowing disregard of an excessive risk to Plaintiff's health or safety.

Hence, the Section 1983 claim that Plaintiff's Eighth Amendment rights were violated should be dismissed for failing to state a claim pursuant to the Prison Litigation Reform Act. 28 U.S.C. § 1915(e).

Alternatively, summary judgment should be granted to Dr. Shariat on Plaintiff's Section 1983 claim for an alleged violation of the Eighth Amendment.

In support of his motion for summary judgment, Dr. Shariat offered Plaintiff's medical records into evidence as well as the expert opinion of a Dr. Garry P. Condon, Director of the Glaucoma Division of Allegheny Ophthalmic & Orbital Associates, which is associated with Allegheny General Hospital. In addition, Plaintiff himself attached to his complaint statements from the two guards who accompanied him on the trip to the hospital for the surgery, one of whom was in the operating room during the laser surgery, namely, Corrections Officer Wilson. Dkt. [4] at p. 10, ¶ 37. See also .id. at p. 25 (C.O. Wilson stated "the surgery was successful, we transported inmate Mayers AJ 2328 back to SCI" Somerset). See also id. at p. 24 (Response to grievance wherein the Health Care Administrator notes that "both of these officers stated that you made no complaints about the surgery."). In addition, Dr. Shariat attached the contemporary

medical records for Plaintiff.  Those contemporary medical records indicate that Plaintiff refused to undergo any procedure to the right eye.  Dkt. [51-6] at pp. 13, 15.  The contemporary medical records show that although topical anesthetics were applied to left eye, there is no indication that any were applied to right eye.  Dkt. [51-6] at 15.  In addition, the contemporary medical progress notes maintained by SCI-Somerset do not indicate any complaints or complications by Plaintiff.  Dkt. [51-6] at 4 (note entered 11-4-03 at 14:00, i.e., 2 P.M. –  "left [from the prison at an illegible time] via security for eye appt/surgery – Returned 1325 [i.e., 1:25 PM] – reviewed [with] MD to continue eye drops as prior to surgery.  To follow up [with] Dr. Shariat – Verbalized instructions for eye drops – realizes his vision should clear later today – will have floaters.  P[lan]) to return to Block, security aware").  Those same progress notes show that it was not until November 25, 2003 that Plaintiff made any complaints.  Dkt. [51-6] at 6: ("S[ubjective]: c/o [complains of] ↑[increased] pain, pressure, photo phobia to [right] eye since YAG laser procedure for glaucoma.  [Left] eye no c/o [complaints of].  Feels like something in eye.  O[bjective]: OD [*oculus dexter*, i.e., right eye] PERRLA [i.e., Pupils Equal, Round, Reactive to Light and Accommodation], Flourscein [sic, should be Fluorescein] Dye reveals no abrasion.  A[ssessment]: Glaucoma.  P[lan]: Refer back to ophalmology [sic]").[1]

---

[1] Plaintiff contests the accuracy of the date of November 25, 2003.  He claims that he went to the medical department on November 5, 2003 not November 25, 2003 as the medical progress notes show.  Dkt. 59 at 5 - 6.  In addition, Plaintiff claims that he has an eye witness who is the one who sent him to the infirmary and the witness is willing to come to court to testify to this fact.  Id.  However, first and foremost, it would not matter which date it was because in neither case does the progress note indicate, as would be expected, that Plaintiff complained that Dr. Shariat erred during the laser procedure.  Second, saying what evidence one will provide at trial is not sufficient to withstand a summary judgment motion.  In other words, Plaintiff should have produced the evidence by affidavit from the witness and not merely say what the witness would testify to at trial.  Grevas v. Village of Oak Park, 235 F.Supp.2d 868, 876 (N.D. Ill. 2002)("if plaintiff could have tendered witnesses to substantiate [the] ADEA claim, he should have offered these witnesses' depositions and/or affidavits in response to defendant's motion for summary judgment; a plaintiff cannot, in the face of a summary judgment motion, assume that a trial will be held at which time he may prove his case");  Cote v. MTP, Inc., No. O1 C 50013, 2003 WL 1477853, *2

In the face of this evidence, showing no objective deprivation occurring on November 4, 2003, indeed showing only that Plaintiff refused to undergo **any** laser treatment of his right eye, and in the face of the fact that there is absolutely no evidence showing the subjective prong, i.e., showing Dr. Shariat was deliberately indifferent, the court concludes that Dr. Shariat carried his initial burden to show no genuine issue of material fact.  Hence, the burden shifted to Plaintiff to show where in the record there is a evidence supporting a genuine issue of material fact in support of his Eighth Amendment claims.  In an effort to meet this burden, Plaintiff offered only legal argument and several exhibits.  The exhibits mostly consist of medical records dated from April 17, 2000 to February 6, 2002, all of which show suspected diagnoses of glaucoma and it being treated with medicated eye drops.  Dkt. [59-1] at 13 - 19.  None of these exhibits, dated long before November 4, 2003, establishes either the objective or subjective prong as to Dr. Shariat on November 4, 2003.  Plaintiff also included a medical record from UPMC dated February 2, 2004, which he cites for showing that he thought he had a cataract, apparently in his left eye and he wanted it removed.  Dkt. [59-1] at 20.  Plaintiff also included two consents that he signed on November 4, 2003, one consenting to have laser surgery on his right eye, Dkt. [59-1] at 21, and the second giving consent to have laser surgery on both his left and right eyes.  Id. at 22.  Again, none of these exhibits establishes either the subjective or objective prong for an Eighth Amendment claim based upon Dr. Shariat's actions or inactions on November 4, 2003.  Viewing this evidence in a light most favorable to Plaintiff might create an inference that Dr. Shariat did

---

(N.D. Ill. March 21, 2003) ("Cote does mention she plans on providing the testimony of a vocational expert to identify the reduction in job opportunities available to her due to her travel limitations and suggests it is thus premature to grant summary judgment. But it is too late to say what evidence she may be able to develop in the future. . . . Summary judgment is the put up or shut up moment in a lawsuit") (internal quotes omitted).  In any event, this dispute over the correct date does not create a genuine issue of **material** fact.

8

attempt to operate on the right eye in light of Plaintiff's written consent to have surgery on the right eye and hence, Plaintiff's version of the story that he got hit with a big beam of light in his right eye might have some support in the record, but even so, there is absolutely no evidence as to the subjective prong, i.e., that Dr. Shariat acted with deliberate indifference on November 4, 2003.

The bulk of Plaintiff's response in opposition to Dr. Shariat's summary judgment motion is devoted to challenging some of the facts recited in the brief in support of the summary judgment motion. However, all of the facts that Plaintiff disputes are simply not factual disputes that are material to the summary judgment motion, i.e., they do not create a genuine factual dispute about either the objective or subjective prong as to Dr. Shariat's actions on November 4, 2003. See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. at 248 (While "disputes over facts that might affect the outcome of a suit under the governing law will properly preclude the entry of summary judgment[,] [f]actual disputes that are irrelevant or unnecessary will not be counted.")(citations omitted). Hence, Plaintiff has not carried his burden to show a genuine issue of material fact as to Dr. Shariat violating Plaintiff's Eighth Amendment right on November 4, 2003 and summary judgment should be entered in Dr. Shariat's favor.

In addition to the federal Section 1983 claim, Plaintiff arguably attempts to make a state law claim of negligence. In light of the recommended grant of summary judgment on the federal claim, upon which the federal Court's jurisdiction was predicated, there does not affirmatively appear on the record any reason for the court to exercise supplemental jurisdiction over this state law tort claim. See, e.g., Boneburger v. Plymouth Township, 132 F.3d 20, 23 n.1 (3d Cir. 1997)("where federal claims are dismissed before trial, the district court 'must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to

the parties provide an affirmative justification for doing so.'")(quoting <u>Borough of West Mifflin v. Lancaster</u>, 45 F.3d 780, 788 (3d Cir. 1995));  28 U.S.C. § 1367(c)(3) which permits a district court to "decline to exercise supplemental jurisdiction over a [state law] claim ... if [it] has dismissed all claims over which it has original jurisdiction . . . ."  The grant of summary judgment by a court on the federal claims is included within the meaning of phrase, "dismissed all claims" contained in Section 1367(c)(3).  <u>Tully v. Mott Supermarkets, Inc.</u>, 540 F.2d 187, 196 (3d Cir. 1976) ("If it appears that the federal claim is subject to dismissal under F.R.Civ.P. 12(b)(6) or could be disposed of on a motion for summary judgment under F.R.Civ.P. 56, then the court should ordinarily refrain from exercising jurisdiction in the absence of extraordinary circumstances.").  Should the district court adopt this report and recommendation and dismiss the state law claim, Plaintiff would have at least thirty days after the order of dismissal in which to file the state law claim in state court.  28 U.S.C. § 1367(d).

<u>CONCLUSION</u>

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report.  Any party opposing the objections shall have seven (7) days from the date of service of the objections to respond thereto.  Failure to timely file objections may constitute a waiver of any appellate rights.

                                                                         Respectfully submitted,

                                                                         <u>/s/ Amy Reynolds Hay</u>
                                                                         AMY REYNOLDS HAY
                                                                         United States Magistrate Judge

Dated: 26 April, 2007

cc: The Honorable Nora Barry Fischer
United States District Judge

Eric Mayers
AJ-2328
S.C.I. GREENSBURG
R.D. #10, Box 10
GREENSBURG, PA 15601

Samuel H. Foreman, Esq. by Notice of Electronic Filing